

002312304D01

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| | | |
|---|---|---|
| Matthew Brunken, | ) | Doc._____ No. CI22-3187 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No. _____ |
| v. | ) | |
| | ) | |
| John Parish, Faith Based | ) | |
| | ) | **ORIGINAL COMPLAINT** |
| Security Network, Inc., Lori | ) | **AND** |
| | ) | **NOTICE OF INJUNCTION** |
| Unruh & Donald Hawkins | ) | |
| | ) | |
| *Defendants.* | ) | |

FILED
IN DISTRICT COURT
DOUGLAS COUNTY NEBRASKA

MAY 1 9 2022

JOHN M. FRIEND
CLERK DISTRICT COURT

TO THE HONORABLE JUDGE OF SAID COURT:

This suit concerns violations of Nebraska's Public Protection Act and Federal RICO statutes. Defendants John Parish and Faith Based Security Network Inc., (Collectively "Defendants") engaged in a very deliberate racketeering operation under the guise of Christian para-education. Together, they intentionally injured Nebraska residents, violated state and federal criminal statutes, and used the proceeds from these activities to acquire assets within this Court's jurisdiction. FBSN is a clear and present danger to this community.

Matthew Brunken brings this suit to secure protection from the criminal syndicate and recover damages for injuries sustained to his person, interests, business, and reputation. In support thereof he would show as follows:

## I.      Introduction

1.      Faith Based Security Network, Inc. (FSBN) is a domestic terrorist organization organized as a non-religious, educational non-profit under Colorado law.

2.      In May of 2021 John Parish, then a director of Faith Based Security Network (FSBN) composed a poster in cooperation with other members of FBSN. The poster juxtaposed purported liability disclaimers with the layout of a "wanted" poster to mislead readers into believing it was a law enforcement document. The poster falsely accused Brunken of numerous felonies and indicated Brunken was planning a mass attack on "FBOs" (faith-based organizations).

3.      This approach was practiced. While posing as law enforcement professionals and licensed private investigators, FBSN generated a library of patently false wanted posters and approached churches claiming that their parishioners were in imminent danger from the subject of the wanted poster and that the church needed to become members of FBSN and pay protection dues to secure its safety.

## II.      Parties

*Plaintiff*

4.      Matthew Brunken was at all relevant times a resident of the state of Nebraska.

*Defendants*

5.      John Parish was at all relevant times a resident of Lancaster County, Nebraska. He can be served at his home address: *John Parish, 7421 S 18th Street, Lincoln, NE.*

6.      Faith Based Security Network, Inc. is organized to conduct business under Colorado law. FBSN is a Colorado Corporation conducting business in Nebraska but is not legally authorized to conduct business in Nebraska.  FSBN maintains no

registered agent in Nebraska and can be served by certified mail return receipt requested to *Carl D. Chinn, 8210 Hodgen Road, Colorado Springs, CO 80908.*

7.    Lori Unruh is a Colorado resident. She is employed by the University of Colorado at Colorado Springs. She may be served by certified mail, return receipt requested, at her home office, 1420 Austin Bluffs Parkway, Colorado Springs, CO 80918

8.    Donald Hawkins is an Alabama resident. He is currently in hiding and discovery is necessary to affect service on him.

### III.    Jurisdiction & Venue

9.    This court has original and exclusive jurisdiction because this action seeks monetary damages within the court's jurisdictional limits.

10.    This court has jurisdiction because, at all relevant times, the Plaintiff was a resident of Douglas County, NE.

11.    This Court has jurisdiction over FBSN, Unruh, and Hawkins pursuant to Nebraska's long-arm statute as codified at §25-536. Defendants acted directly or by an agent as to a cause of action arising from the person (a) transacting business in Nebraska; (2) contracting to supply services or things in Nebraska; (3) causing tortious injury by an act or omission in Nebraska; (4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state; (5) Contracting to insure any person, property, or risk located within this state at the time of contracting; and (6) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

12.     This Court has jurisdiction over Faith Based Security Network because FBSN committed torts and engaged in business in Nebraska. FBSN sells memberships, offers services, consults, and solicits donations in Nebraska. As a director, Parish conducted his business from his home office in Lincoln, Nebraska.

13.     Venue is proper in Douglas county because some damages, torts, and injuries accrued in Douglas County, Nebraska.

## IV.     Relief Sought

*Equity*

14.     Plaintiff moves the Court to issue a temporary and permanent injunction precluding FBSN from engaging in further business in Nebraska.

15.     Plaintiff prays for entry of a temporary injunction precluding Defendants from republishing the Notice of Interest (discussed below) or a substantial equivalent during the pendency of this litigation.

16.     Plaintiff seeks a protective order against the named Defendants to protect his safety.

*Law*

17.     Plaintiff seeks actual monetary damages of $850,000.

18.     Plaintiff pleads for recovery of punitive and special damages. Defendants at all relevant times acted with actual malice and/or recklessness.

19.     Plaintiff seeks to recover all reasonable legal costs, fees, including attorney's fees.

## V.     General Allegations

20.     In May of 2021 John Parish entered into an illegal agreement with Chad Hein, at the time a law enforcement officer with the Lincoln Police Department. As part

of the arrangement, Parish and FBSN accepted stolen property and records from LPD pertaining to a frivolous complaint filed by an FSBN member against Brunken. Chad Hein was disciplined by LPD for his actions in the matter following an Internal Affairs Investigation.

21.    Parish then composed a publication patterned on a wanted poster and titled "Notice of Interest." The notice included a disclaimer that "the original source" (Parish), presented in the Notice as a witness, was NOT to be identified as the source of the allegations. The notice was specifically drafted to confuse readers into believing it came from a law enforcement organization and was privileged. The notice falsely accused Plaintiff of:

    a.   Two felony weapons convictions;

    b.   Violent tendencies;

    c.   Threatening and intimidating children;

    d.   Committing fraud;

    e.   Sexually assaulting children;

    f.   Using an alias; Specifically, the statement(s) made were crafted to convey fraud: that Plaintiff used the name Brunken unlawfully, and that Brunken was not Plaintiff's legal name;

    g.   Threatened and intimidated children to lie on his behalf;

    h.   Subject to a court order forbidding him from having contact with children;

22.    The notice also falsely claimed that a "family member" described Plaintiff as a "troubled teen," insinuating mental health problems and legal trouble as a teenager.

23.    The Notice of Interest was calculated to infer, given the source and the nature of the work FSBN purports to do, that Brunken carries weapons with intent to commit mass injuries at churches.

24.     John Parish and FSBN, individually, jointly, and severally, published defamatory statements upon Derek Steinacher and other residents of Douglas and Lancaster Counties in a May 2021 email. These false and defamatory allegations included charges that Brunken:

a. Targeted an Omaha Lutheran church for sexual exploitation;

b. Was arrested for and convicted of two felony weapons charges;

c. Was identified as a troubled teenager by a family member;

d. Was a public threat due to violent tendencies;

e. Sexually assaulted children;

f. Violating an alleged probation or parole condition by committing fraud and being around youth.

25.     In "confidential" emails, Parish and other members of FSBN discussed their explicit intent to craft the Notice of Interest to create the "feel" that Brunken was a registered sex offender. Other emails expressed annoyance that their own lawyers were specifically advising them that allegations they were throwing around were demonstrably false.

26.     In these emails, Parish and FBSN attributed the following false and defamatory allegations to Brunken:

a. Targeted an Omaha Lutheran Church for sexual exploitation;

b. Was arrested for and convicted of two felony weapons charges;

c. Was identified as a troubled teenager by a family member;

d. Was a public threat due to violent tendencies;

e. Sexually assaulted children;

f. Violating an alleged probation or parole condition by committing fraud and being around youth.

27.    Parish and other FSBN agents bragged in company emails about using the software Constant Contact to monitor how many "hundreds" of email targets opened and viewed the Notice of Interest.

28.    FBSN agents actively discussed how to increase the number of unsolicited email recipients they could target to share the allegations in the Notice of Interest with.

29.    Lori Unruh misappropriated University of Colorado hardware and licenses, in violation of state law, in furthering the criminal enterprise and harming Mr. Brunken.

30.    Brunken served Parish with a certified request for retraction specifically confronting Parish with the falsity of the allegations and demanding correction. Parish and FSBN refused.

31.    Agents of the John Paul II Newman Center received FBSN's Notice and relied on it, believing its representation that it was an official law enforcement record.

32.    On August 24, 2021 JP Newman Center agents delivered written and verbal invitations to Mr. Brunken, while he was studying on Scott Campus, to attend a welcome BBQ dinner. The purpose of the dinner was purportedly to "welcome students into the new school year" and introduce students to the JPN amenities.

33.    When Mr. Brunken arrived, Alex Pandolfo asked to see Brunken's UNOmaha Photo Identification (MavCard) to verify he was invited. Mr. Pandolfo admitted Brunken in and directed him to the courtyard.

34.    Pandolfo published communications upon JP Newman Employees, agents, and patrons that charged Brunken with:

a.    possession of a firearm, in violation of the law, at the Newman Center, UNMC, and UNOmaha;

b.    Possession a weapon, in violation of the law, at the Newman Center, UNMC, and UNOmaha;

c.    Intending to commit a crime at the BBQ;

d.    Trespassing.

35.    Pandolfo then called 9-1-1 and stated to dispatch that Brunken was armed and a fugitive from justice.

36.    Upon arrival, police tackled and handcuffed Brunken in front of several-hundred peers. Police searched Brunken and found no weapons. Indeed, Brunken possessed only a COVID mask, car keys, and his smart phone.

37.    When Brunken produced his written invitation, Pandolfo advised police that the report was fabricated so that Brunken could be served a do not trespass letter for JPN, as Brunken had never been on the property before.

38.    On August 26, 2021, Scott Residential Management, LLC, cited FBSN's false and defamatory statements in declining its option to extend a business contract with Brunken.

39.    On or about October 1, 2021, UNMC adversely modified Brunken's employment contract citing the false and defamatory allegations made by FBSN.

## VI.    CAUSES OF ACTION

### Criminal Impersonation

40.    Plaintiff adopts and incorporates by reference each and every allegation set forth above.

41.    FSBN and Parish knowingly, and without justification, pretended to be an employee of a law enforcement organization and engaged in activities in his or her fictitious capacity with the intent to gain a pecuniary benefit for himself, herself, or another and to deceive or harm another.

42.     FSBN and Parish carried on a profession, business, or any other occupation without a license, certificate, or other authorization required by law. FSBN engaged in law enforcement activities without authorization and engaged in private investigator business without a license.

43.     As a direct and proximate result of FSBN's and Parish's impersonations, Brunken suffered injuries and damages.

### Public Protection Act (Section 28-1351 et seq.)

44.     Plaintiff incorporates and reasserts each paragraph above, as though fully set forth herein.

45.     FSBN and Parish, through a pattern of racketeering activity, directly or indirectly acquired or maintained an interest in or control of an enterprise or real property in violation of Section 28-1355(2).

46.     FSBN and Parish used or invested proceeds that they knew were derived, directly or indirectly, from a pattern of racketeering activity (or proceeds derived from investments funded by such activity) to acquire a right, interest, or equity in real property or operation of an enterprise.

47.     FSBN and Parish conducted and participated in FSBN's affairs through a pattern of racketeering activity, as enumerated and defined in Neb. Rev. Stat. Section 28-1354(d).

48.     FSBN and Parish knowingly and intentionally engaged in the commission of, criminal attempt to commit, conspiracy to commit, aiding and abetting in the commission of, aiding in the consummation of, acting as an accessory to the commission of, or the solicitation, coercion, or intimidation of another to commit or aid in the commission of offenses involving fraud, including criminal impersonation, as enumerated and defined in Neb. Rev. Stat. Section 28-1354(d)

49.    FSBN and Parish conspired or attempted to violate any or all the provisions of subsection (1), (2), or (3) of Section 28-1355 of the Nebraska Revised Statutes.

50.    As a direct and proximate result of FSBN's and Parish's violations of the Public Protection Act, Plaintiff suffered injuries and damages.

## Racketeer Influenced and Corrupt organizations Act
## (18 U.S.C. 1962(a)-(d))

51.    Plaintiff incorporates and reasserts each paragraph above, as though fully set forth herein.

52.    FSBN and Parish, through a pattern of racketeering activity, directly or indirectly acquired or maintained an interest in or control of the enterprise Faith Based Security Network, Inc. and real property.

53.    FSBN and Parish used or invested proceeds that they knew were derived, directly or indirectly, from a pattern of racketeering activity (or proceeds derived from investments funded by such activity) to acquire a right, interest, or equity in real property or operation of an enterprise.

54.    FSBN and Parish conducted and participated in FSBN's affairs through a pattern of racketeering activity.

55.    FSBN and Parish knowingly and intentionally engaged in the commission of, criminal attempt to commit, conspiracy to commit, aiding and abetting in the commission of, aiding in the consummation of, acting as an accessory to the commission of, or the solicitation, coercion, or intimidation of another to commit or aid in the commission of offenses involving fraud, including criminal impersonation, as enumerated and defined in Neb. Rev. Stat. Section 28-1354(d), and mail fraud.

56.    FSBN and Parish conspired or attempted to violate any or all the provisions of subsection (1), (2), or (3) of Section 28-1355 of the Nebraska Revised Statutes.

57.  Each Defendant had a part in directing the enterprises affairs.

58.  As a direct and proximate result of FSBN's and Parish's violations of the Public Protection Act, Plaintiff suffered injuries and damages.

## Conspiracy to Violate the Public Protection Act and RICO

59.  Plaintiff incorporates and reasserts each paragraph above, as though fully set forth herein.

60.  Defendants gathered in a meeting of the minds with the express intent of engaging in activities that violate the Public Protection Act and RICO statutes.

61.  The conspiracies were carried out in 2019 to 2022.

62.  Brunken suffered injuries to his business and property as a direct and proximate result of Defendants' conspiracy.

63.  Brunken suffered injuries to his business and property as a direct and proximate result of Defendants' violations of the Public Protection Act and RICO statutes.

## Public Disclosure of Private Facts

64.  Plaintiff adopts and incorporates by reference each and every allegation set forth above.

65.  Defendants knowingly and intentionally published Plaintiff's private affairs by disseminating his private records upon third parties without authorization.

66.  The invasion of his privacy and dissemination of extremely sensitive matters was highly offensive to him and would be highly offensive to a reasonable person. The publication was not a matter of public concern, and the details publish were not already known.

67.  FSBN's "Notice" reports a birthday, social security number, vehicle license and description, residence(s) and other confidential information.

68.     As a direct and proximate result of the invasion, Brunken suffered injury to his mental health, emotional damages, damages to his reputation, and violations of his due process rights.

**Interference with Prospective Business Contract**

69.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

70.     A valid and enforceable contract—or in the alternative, a reasonable certainty of execution thereof—existed between Brunken and Scott Residential Management, LLC. At all relevant times Defendants knew of this contract.

71.     A valid and enforceable contract existed between Brunken and University of Nebraska Medical Center. At all relevant times Defendants knew of this contract.

72.     Defendants published false and defamatory statements with the knowledge and intent that said material would interfere with contract formation.

73.     As a direct and proximate result of Defendants' actions, Brunken suffered pecuniary damages, loss of anticipated economic opportunity, and hardship.


**Interference with Existing Contracts**

74.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

75.     A valid and enforceable employment contract existed between Brunken and the University of Nebraska Medical Center (UNMC). A valid and enforceable educational services contract existed between Brunken and the University of Nebraska at Omaha (UNOmaha). At all relevant times, Defendants knew of these contracts.

76.     Defendants published false and defamatory statements with the knowledge that it would interfere with contract extensions, and recurring contracts, between Brunken, the UNMC, and UNOmaha.

77.     As a direct and proximate result of Defendants' actions, Brunken suffered pecuniary damages, loss of anticipated economic opportunity, and hardship.

### Commercial Disparagement

78.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

79.     Defendants published statements that were false and that they knew to be false.

80.     Defendants intended the publication of the defamatory material to cause financial loss to plaintiff's professional reputation as a sole proprietor in the area. Defendants believed their conduct would result in financial loss for Brunken's enterprises.

81.     Plaintiff, as owner operator of the sole proprietorship, suffered pecuniary loss and loss of reputational capital as a direct and proximate result of Defendants' actions.

82.     Defendants acted with malice. They knew their statements to be false or acted with reckless disregard as to their truth.

### Negligence

83.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

84.     Defendants assumed a duty of care when he invited Brunken onto JPN property to attend the welcome back BBQ.

85.     Defendants assumed a duty of care when they learned of the prospective and existing contracts between Brunken and Scott Residential Management, Inc., UNMC, and UNOmaha.

86.     Defendants assumed a duty of care when they took possession, and discovered possession, of Brunken's counseling files, private records, and private facts.

87.     Defendants assumed a duty of care when they learned of Brunken's business interests in the area and conspired to take malicious actions that they reasonably could have foreseen causing damages.

88.     Defendants assumed a duty of care when they composed, stored, and drafted FSBN's Notice of Interest, recognizance immense defamatory potential therein, and acted intentionally to rebroadcast, disseminate, and distribute the "Notice."

89.     Defendants breached those duties by publishing FSBN's "Notice" with reckless disregard for the truth of the Notice, or with actual knowledge of the falsity of allegations therein.

90.     Defendants breached those duties by recklessly stating Brunken was armed, knowing that the false report would result in a public use of force.

91.     Defendants breached those duties when they published Brunken's private files, records, and facts upon third persons, without his consent or justification.

92.     Defendants breached those duties when they conspired to cause damages to Brunken.

93.     Brunken suffered injuries as a direct and proximate result of Defendants' acts and omissions.

## Intentional Infliction of Emotional Distress

94.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

95.     Pandolfo and the Newman Center acted intentionally and/or recklessly in filing a false police report rather than asking Brunken to leave. Pandolfo and the Newman Center acted intentionally or recklessly in telling police Brunken was armed so that they would use force against him in front of his student peers. And they acted intentionally and/or recklessly in issuing a ban and bar notice, and notifying others of that action, after police advised them that Brunken was unarmed, cooperative, violating no law, and that they were required to ask him to leave before filing a ban and bar notice.

96.     Defendants acted intentionally and/or recklessly in composing and publishing the "Notice of Intent."

97.     Defendants' conduct was extreme and outrageous.

98.     Defendants' conduct caused plaintiff extreme emotional distress resulting in the need for mental health services.

99.     As a direct and proximate result of the invasion, Brunken suffered injury to his mental health, emotional damages, and damages to his reputation.


## Defamation

100.     Plaintiff incorporates and reasserts each paragraph above, as though fully set forth herein.

101.     Defendants published oral and written statements upon third persons, including in Douglas County, Nebraska, that they knew, or reasonably should have known, to be defamatory and defamatory per se.

102.     The statements were false, defamatory, and intended to be understood as statements of fact, not opinion.

103.     Defendants acted with malice, with knowledge that the statements were false and with reckless disregard as to their truth.

## Invasion of Privacy

104.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

105.     In the alternative, Defendants intentionally intruded upon Plaintiff's private affairs by knowingly and intentionally disseminating private information about him.

106.     The invasion of his privacy and dissemination of extremely sensitive matters was highly offensive to him and would be highly offensive to a reasonable person.

107.     As a direct and proximate result of the invasion, Brunken suffered injury to his mental health, emotional damages, and damages to his reputation.

## Conspiracy to Defame and Invade Privacy

108.     Plaintiff incorporates and reasserts each paragraph above, as though fully set forth herein.

109.     Defendants gathered in a meeting of the minds with the express intent of injuring Brunken's reputation and invading his privacy.

110.     The conspiracies were carried out on in May and August of 2021.

111.     Brunken suffered injuries as a direct and proximate result of Defendants' conspiracy.

## Fair Credit Reporting Act

112.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

113.     Defendants published Plaintiff's personally identifying information upon third parties, without authorization or justification.

114.     Defendants requested a credit report for an impermissible purpose.

115.     As a direct and/or proximate damage of the publication of Plaintiff's personal identifying information, he suffered damages.

116.     In the alternative, Defendants published information that they knew, or reasonably should have known, was inaccurate.

117.     Brunken served Defendants with written notice of the inaccuracies. Defendants failed to conduct a reasonable investigation and/or to correct the inaccuracies.

118.     As a direct and/or proximate damage of the publication of Plaintiff's personal identifying information, he suffered damages.

## Strict Liability

119.     Plaintiff adopts and incorporates by reference each and every allegation set forth above.

120.     Defendants designed and distributed a product, in the Notice of Interest, and service, in its pay for intimidation scheme and advisory memorandums that were defectively designed, posed a high likelihood of injury, and contained an insufficient warning on their proper use.

121.     Brunken and his interests were damaged as a direct and proximate result of Defendants' products and services in the marketplace.

## VII.   Doctrines

### Special Damages

122.      Plaintiff adopts and incorporates by reference each and every allegation set forth above.

123.      Brunken pleads for recovery of treble damages on the Public Protection Act and RICO claims itemized above.

124.      Brunken is entitled to aggravating and special damages because Defendants acted with actual malice at all relevant times.

125.      Defendants refusal to retract their defamatory publications following Brunken's timely request for retraction entitles him to recovery of special damages

### Spoliation of Evidence

126.      Plaintiff adopts and incorporates by reference each and every allegation set forth above.

127.      Brunken served John Paul Newman Center, Inc., Alex Pandolfo, John Parish, FSBN, Jason Kennedy, and Austin Kennedy with notices of impending suit and directed them to preserve

128.      Defendants intentionally and/or recklessly destroyed, or significantly altered, relevant evidence, including, but not limited to, the event log books and sign in sheets listing material witnesses, security camera footage, and emails.

129.      Austin Kennedy knowingly destroyed snapchats with Olivia Nelson and Austin's roommates that carried clear material value to the claims at bar. Jason Kennedy knew, and should have known, that Austin Kennedy would destroy the snapchats. Jason failed to take reasonable action to prevent the destruction of the evidence.

130.      Defendants were aware and apprised of the potential of the destroyed evidence to help resolve this action.

131.         Defendants' spoliation impaired Brunken's ability to recover damages for his injuries. Identifying many witnesses to the action will now be impossible or possible only with considerable expense.

## Vicarious Liability

132.         Plaintiff adopts and incorporates by reference each and every allegation set forth above.

133.         At all relevant times John Parish, Lori Unruh, and Donald Hawkins were members of FSBN and engaged in a joint venture with FSBN.

## Ultra Vires

134.         Plaintiff adopts and incorporates by reference each and every allegation set forth above.

135.         At all relevant times Defendants engaged in conduct beyond the limits to which their respective employers were authorized to conduct business under the laws of the state in which they are incorporated or registered. FBSN was formed, and exist, principally to conceal unlawful activities, including racketeering. FBSN, as a legally recognized corporation, is a sham. At all relevant times FSBN comingled funds with the personal accounts of agents and failed to meaningfully comply with State reporting requirements. This Court should pierce the corporate veil in assessing damages against FBSN

136.         FSBN is not registered to conduct business in Nebraska.

137.         Each and every instance of conduct by Parish, to the extent engaged in as an agent of FSBN within Nebraska borders, was thus ultra vires.

## Agency

138.      Plaintiff adopts and incorporates by reference each and every allegation set forth above.

139.      At all relevant times, each and all Defendants acted as agent, employee, and vice principal of one another. At all relevant times, Defendants was operated within the course and scope of their employment(s) and under the direction of one another. John Paul II Newman Center, and FSBN assumed full liability for Defendants' actions and omissions under the theory of respondeat superior.

## Frivolous Pleading

140.    Brunken is entitled to his costs and fees id defending frivolous, meritless, groundless, and malicious affirmative defenses, counterclaims, and set offs pleaded in this action by Defendants.

## Conditions Precedent

141.    All conditions precedent occurred or were performed

## Prayer For Relief

WHEREFORE, premises considered, Plaintiff prays for relief in his favor and against Defendants as follows:

    a.  Plaintiff moves the Court to issue a temporary and permanent injunction precluding FBSN from engaging in further business in Nebraska.

    b.  Plaintiff prays for entry of a temporary injunction precluding Defendants from republishing the Notice of Interest (discussed below) or a substantial equivalent during the pendency of this litigation.

c.    Plaintiff seeks a protective order against the named Defendants to protect his safety.

d.  Actual damages of $850,000;

e.  Treble damages for violations of the federal RICO statutes and Nebraska's Public Protection Act

f.    Damages for mental anguish;

g.  Damages for pain and suffering;

h.   Reimbursement of medical and therapy expenses;

i.    Exemplary damages within the jurisdictional limits of the court;

j.    Special damages of $500,000;

k.   Attorneys' fees and costs;

l.    Costs of Court; and

m.  A declaration that Defendants actions and omissions violated Plaintiff's rights

Respectfully Submitted on this the 19th day of May 2021.

/s/ Matthew Brunken

Plaintiff

KennedyDistDouglas09.21@gmail.com

P.O. Box 22

Greenwood, NE 68366

(402) 672-6272