IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW BRUNKEN, | |
| Plaintiff, | **8:22–CV–227** |
| vs. | |
| JOHN PARISH, FAITH BASED SECURITY NETWORK, INC., LORI UNRUH, and DONALD HAWKINS, | **MEMORANDUM AND ORDER ON DEFENDANT JOHN PARISH'S MOTION TO DISMISS** |
| Defendants. | |

Plaintiff Matthew Brunken brought suit against defendants John Parish (Parish), Faith Based Security Network, Inc. (FBSN), Lori Unruh (Unruh), and Donald Hawkins (Hawkins), (collectively, Defendants). Filing 1-2 at 1. Brunken's Amended Complaint alleges 16 distinct "causes of action" against Defendants. Filing 1-2 at 8–18. Brunken initially brought suit in Nebraska state court, but Parish removed this case to federal court asserting jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Filing 1 at 1.

This matter comes before the Court on Parish's Motion to Dismiss Brunken's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state claims upon which relief can be granted. Filing 8. Parish alternatively moves for relief under Federal Rule of Civil Procedure 12(f) and asks this Court to strike pertinent portions of Brunken's Amended Complaint. Filing 8. Brunken asks this Court to deny Parish's Motion to Dismiss, or—in the alternative—grant him leave to amend. Filing 17 at 21. After considering the parties' submissions, relevant portions of the record, and the applicable law, the Court grants Parish's Motion to Dismiss in part. Brunken's claims under federal law (i.e., those made pursuant to the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, et seq. and those made pursuant to the

1

Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1691, et seq.) are dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

As a result, the Court no longer maintains jurisdiction to hear Brunken's remaining state law claims pursuant to 28 U.S.C. § 1441. Therefore, this case is remanded back to state court for resolution of the remaining claims.

# I. BACKGROUND

## A.    Factual Background[1]

Parish claims in his brief that FBSN "is a non-profit public charity that works to assist faith-based organizations with security matters ranging from medical incidents, theft, cyber-threats, child protection, and mass shooting risks to bomb threats." Filing 9 at 1. Brunken prefers to describe FBSN as a "domestic terrorist organization." Filing 1-2 at 2. This action arises after Parish, in his capacity as the director of FBSN, created "a poster in cooperation with other members of FBSN." Filing 1-2 at 2. According to Brunken, that "poster falsely accused [him] of numerous felonies and indicated that [he] was planning a mass attack on" faith-based organizations. Filing 1-2 at 2.

Specifically, Brunken's Amended Complaint alleges that sometime around May 2021, Parish created a publication titled "Notice of Interest" that was meant to look like a "wanted poster." Filing 1-2 at 5. Brunken claims that this Notice of Interest was drafted in such a way as to purposefully "confuse readers into believing it came from a law enforcement organization and was privileged." Filing 1-2 at 5. The Amended Complaint claims that this Notice of Interest falsely accused Brunken of the following: (a) that Brunken had two felony weapons convictions; (b) that

---

[1] Except where otherwise indicated, the following facts are taken from Brunken's Amended Complaint. *See Cook v. ACS State & Loc. Sols., Inc.*, 663 F.3d 989, 992 (8th Cir. 2011) (noting that on a motion to dismiss for failure to state a claim, a "court accepts as true all factual allegations but is not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted).

Brunken had violent tendencies; (c) that Brunken threatened and intimidated children including threatening and intimidating children to lie on Brunken's behalf; (d) that Brunken had committed fraud; (e) that Brunken had sexually assaulted children; (f) that Brunken had fraudulently used an alias; (g) that Brunken was "[s]ubject to a court order forbidding him from having contact with children;" and (h) that Brunken had been described by a "family member" as having been "a 'troubled teen,' insinuating mental health problems and legal trouble as a teenager." Filing 1-2 at 5–6. Brunken further claims that the Notice of Interest was "calculated to infer [sic] . . . that [Brunken] carries weapons with intent to commit mass injuries at churches." Filing 1-2 at 6.

According to Brunken, the Notice of Interest was also crafted in such a way so as "to create the 'feel' that [Brunken] was a registered sex offender." Filing 1-2 at 6. He further claims that "Parish and other FBSN agents bragged in company emails about using the software Constant Contact to monitor how many 'hundreds' of email targets opened and viewed the Notice of Interest." Filing 1-2 at 6. The Amended Complaint goes on to state that at some unspecified time, Brunken "served Parish with a certified request for retraction specifically confronting Parish with the falsity of the allegations and demanding correction." Filing 1-2 at 7. However, Brunken claims that "Parish and FBSN refused." Filing 1-2 at 7.

The Amended Complaint also asserts several claims relating to and arising out of these and other similar accusations by FBSN against Brunken. *See* Filing 1-2 at 6–8. Specifically, Brunken alleges that Parish and FBSN "published defamatory statements" to certain Nebraska residents in Douglas County, Nebraska, and Lancaster County, Nebraska, "in a May 2021 email." Filing 1-2 at 6. These allegedly defamatory statements included that: (a) Brunken targeted an Omaha church for sexual exploitation; (b) Brunken was "arrested for and convicted of two felony weapons charges"; (c) Brunken was "identified as a troubled teenager by a family member"; (d) Brunken

3

was "a public threat due to violent tendencies"; (e) Brunken "[s]exually assaulted children": and (f) Brunken "[v]iolat[ed] an alleged probation or parole condition by committing fraud and being around youth." Filing 1-2 at 6.

Brunken also alleges that the Notice of Interest was received by "the John Paul Newman Center." Filing 1-2 at 7. Brunken claims he was invited to attend a welcome dinner for new students at the John Paul Newman Center that took place on August 24, 2021. Filing 1-2 at 8. When he arrived, however, an individual associated with the John Paul Newman Center "called 9-1-1" and informed law enforcement that Brunken "was armed and a fugitive from justice." Filing 1-2 at 8. As a result, "police tackled and handcuffed Brunken in front of several-hundred [sic] peers." Filing 1-2 at 8. Brunken claims that "the report was fabricated so that Brunken could be served a do not trespass letter" for the John Paul Newman Center. Filing 1-2 at 8. Brunken further claims that as a result of "FBSN's false and defamatory statements[,]" one company "declin[ed] its option to extend a business contract with" him, while another organization "adversely modified [his] employment contract" with him. Filing 1-2 at 8.

### B.    Procedural Background

Brunken initiated this action on May 19, 2022, by filing his original Complaint in the District Court of Douglas County, Nebraska. Filing 1-1 at 1. Brunken later filed an Amended Complaint in the District Court of Douglas County, Nebraska, on June 21, 2022. Filing 1-2 at 22. This Amended Complaint is the operative Complaint at issue on Parish's Motion to Dismiss. *See* Filing 8 at 1.[2] On June 24, 2022, three days after Brunken filed his Amended Complaint in state court, Parish filed a Notice of Removal in this Court pursuant to 28 USC §§ 1441 and 1446. Filing

---

[2] In addition to seeking money damages, Plaintiff's Amended Complaint also requests "temporary and permanent" injunctive relief in several different forms. *See* Filing 1-2 at 4. Plaintiff has not filed a motion for a temporary restraining order or any other motion for temporary injunctive relief with this Court. That issue is, therefore, not presently before the Court.

1 at 3–6. The sole basis Parish invoked for removing this action to federal court was federal question jurisdiction pursuant to 28 U.S.C. § 1331. Filing 1 at 3.

In his Notice of Removal, Parish stated that because Brunken's Amended Complaint included "claims under the Racketeer Influenced and Corrupt Organizations Act ('RICO') pursuant to 18 U.S.C. § 1962(a)–(d) and the Fair Credit Reporting Act, 15 U.S.C. § 1681[,] et seq." this Court has original jurisdiction over these claims pursuant to 28 U.S.C. § 1331 because they arise under federal law. Filing 1 at 3–4. Parish therefore submitted that this Court likewise maintained jurisdiction over Brunken's state law claims under 28 U.S.C. § 1441(c). Filing 1 at 4.[3] Parish did not claim that there was diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. *See generally* Filing 1 at 3–6. After this case was removed to federal court, Parish filed the present Motion to Dismiss on August 1, 2022. Filing 9.

## II. LEGAL ANALYSIS

### A.     *Pro Se* Considerations

Brunken has brought this action *pro se*. Filing 17 at 19.[4] "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

---

[3] Pursuant to 28 U.S.C. § 1441(c),

(1)  If a civil action includes—

(A) a claim arising under the Constitution, laws or treaties of the United States (within the meaning of section 1331 of this title), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed in the action would be removable without the inclusion of the claim described if subparagraph (B).

[4] As noted above, one of the factual allegations Brunken makes in his Amended Complaint is that Defendants "falsely accused" Brunken of "[u]sing an alias" in such a way as to convey that he "used the name Brunken unlawfully, and that Brunken was not Plaintiff's legal name." Filing 1-2 at 5. Along with his opposition brief, Brunken filed an authenticated index of exhibits. *See* Filing 18. One of the documents in this index of exhibits includes an e-mail from Parish where he refers to a "Matthew Bovee." Filing 18 at 11. Brunken's opposition brief cites this series of e-mails

stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted). "Though pro se complaints are to be construed liberally . . . they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *accord Sandknop v. Missouri Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir 2019); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("Although we must liberally construe plaintiff's factual allegations . . . we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (internal citation omitted).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

*Stone*, 364 F.3d at 915.

## B.      Rule 12(b)(6) Standards

Upon a defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6), "[c]onclusory allegations and 'threadbare recitals of the elements of a cause of action' cannot survive . . . ." *Du Bois v. Bd. of Regents of Univ. of Minn.*, 987 F.3d 1199, 1205 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Instead, "[a] claim survives a Rule 12(b)(6)

---

where the names "Matthew Bovee" and "Bovee" are referenced to support his contention that "Parish and other members of FSBN discussed their explicit intent to craft the Notice of Interest [poster] to create the 'feel' that Brunken was a registered sex offender." Filing 17 at 3. The Court notes that "Matthew Bovee" has routinely represented himself *pro se* before various courts in recent years. *See Texas Dep't of Crim. Just. v. Bovee*, 632 S.W.3d 244(Tex. App. 2021); *Bovee v. Heinz N. Am. Div. of J.H. Heinz Co., L.P.*, No. 03-19-00769-CV, 2020 WL 479276 (Tex. App. Jan. 30, 2020); *In re Bovee*, No. 04-17-00143-CR, 2017 WL 1066796 (Tex. App. Mar. 22, 2017); *Bovee v. Houston Press LLP*, No. 10-15-00346-CV, 2017 WL 1101280 (Tex. App. Mar. 15, 2017); *Bovee v. Houston Press LP*, No. 14-17-00008-CV, 2017 WL 1015675 (Tex. App. Mar. 14, 2017); *Bovee v. Houston Press LLP*, No. 10-16-00051-CV, 2016 WL 1274755 (Tex. App. Mar. 31, 2016).

motion to dismiss only if the complaint's nonconclusory allegations, accepted as true, make it not just 'conceivable' but 'plausible' that the defendant is liable." *Mitchell v. Kirchmeier*, 28 F.4th 888, 895 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 680-83). To put it another way, a court "must determine whether a plaintiff's complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Far E. Aluminium Works Co. v. Viracon, Inc.*, 27 F.4th 1361, 1364 (8th Cir. 2022) (quoting *Braden v. WalMart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)). "Mere conclusory statements and factual allegations lacking enough specificity to raise a right to relief above the speculative level are insufficient to support a reasonable inference that the defendant is liable." *Richardson v. BNSF Ry. Co.*, 2 F.4th 1063, 1068 (8th Cir. 2021) (internal quotation marks and citations omitted). Moreover, "[w]hile the Court accepts as true all well-pleaded factual allegations and reasonable inferences drawn from those allegations, the Court need not stretch allegations beyond their sensible and reasonable implications." *Glick v. W. Power Sports Inc.*, 944 F.3d 714, 717 n.2 (8th Cir. 2019).

### C.      Plaintiff's Claims Arising Under Federal Law

#### 1.   *Preliminary Considerations*

Of the 16 claims brought by Brunken, only two—the RICO and FCRA causes of action—arise under federal law. All other claims are premised upon state law.[5] The Court will begin by analyzing Brunken's two federal law claims first because if they fail to state claims upon which relief may be granted, this failing implicates jurisdictional concerns over the state law claims.

---

[5] The Fourth Count in Plaintiff's Amended Complaint alleges "Conspiracy to Violate the [Nebraska] Public Protection Act and RICO." Filing 1-2 at 11. Although Plaintiff groups them together, this Count necessarily presents more than one claim because the Nebraska Public Protection Act and RICO are two entirely different statutes. The Court will address Plaintiff's RICO claim as alleged in the Third Count of his Amended Complaint together with the RICO conspiracy claim he alleges in the Fourth Count of his Amended Complaint. Therefore, besides his RICO claim, conspiracy to violate RICO claim, and FCRA claim, there are 14 non-federal claims in this case.

2. *Brunken's RICO Act Claims Pursuant to 18 U.S.C. § 1961, et seq.*

   a. Overview of the Claim

The first claim alleges a substantive RICO Act violation. Filing 1-2 at 3. The second claim alleges a conspiracy to violate the RICO Act. Filing 1-2 at 4. The Court will analyze them both together.

Brunken's Amended Complaint alleges that "FBSN and Parish, through a pattern of racketeering activity, directly or indirectly acquired or maintained an interest in or control of the enterprise Faith Based Security Network, Inc. and real property." Filing 1-2 at 10. Brunken further claims that "FBSN and Parish used or invested proceeds that they knew were derived directly or indirectly, from a pattern of racketeering activity (or proceeds derived from investments funded by such activity) to acquire a right, interest, or equity in real property or operation of an enterprise." Filing 1-2 at 10. Brunken submits that "FBSN and Parish conducted and participated in FBSN's affairs though a pattern of racketeering activity." Filing 1-2 at 10. The Amended Complaint goes on to claim,

> FBSN and Parish knowingly and intentionally engaged in the commission of, criminal attempt to commit, conspiracy to commit, aiding and abetting in the commission of, aiding in the consummation of, acting as an accessory to the commission of, or the solicitation, coercion, or intimidation of another to commit or aid in the commission of offenses involving fraud, including criminal impersonation as enumerated and defined in Neb. Rev. Stat. Section 28–1354(d) and mail fraud.

Filing 1-2 at 10–11.

The final factual allegations that Brunken makes in support of his federal RICO claim are "FBSN and Parish conspired or attempted to violate any or all the provisions of subsection (1), (2), or (3) of Section 28–1355 of the Nebraska Revised Statutes"[6] and "[e]ach Defendant had a

---

[6] Neb. Rev. Stat. § 28–1355 is captioned "Pattern of racketeering activity or collection of an unlawful debt; prohibited acts." It is part of the Nebraska Public Protection Act's statutory scheme.

part in directing the enterprises [sic] affairs." Filing 1-2 at 11. Brunken claims to have "suffered injuries and damages" as a result. Filing 1-2 at 11. Brunken's claim alleging that Defendants conspired to violate the RICO statutes incorporates the foregoing, but further claims that "Defendants gathered in a meeting of the minds with the express intent of engaging in activities that violate . . . the RICO statutes" and that these "conspiracies were carried out in 2019 to 2022." Filing 1-2 at 11.

### b. The Parties' Arguments

Parish does not dispute that RICO affords a private right of action. Filing 9 at 6. However, he contends that Brunken's "Complaint is not sufficient for the typical broad pleading standards of Fed. R. Civ. P. 8, let alone the heightened standards required under Fed. R. Civ. P. 9(b) for a RICO violation." Filing 9 at 6. Parish similarly contends that Brunken has not sufficiently pleaded the necessary elements to establish a substantive RICO violation, and his RICO conspiracy claim also fails because it does not plead any predicate acts under 18 U.S.C. § 1961(1). Filing 9 at 6–7.

Brunken attempts to clarify in his brief that "[t]he RICO claims in the complaint rest on a pattern of criminal impersonation, not fraud." Filing 17 at 8. Based on this distinction, Brunken contends that his RICO claim based on "criminal impersonation" is not subject to Rule 9(b)'s heightened pleading standard. Filing 17 at 8. Brunken posits that he has sufficiently pleaded a substantive RICO claim because his complaint "pleads the existence of FBSN as a criminal enterprise; (2) Parish's association as both a director, member, and conspirator of FBSN; (3) Parish's involvement in . . . the criminal impersonation; (4) that constituted a pattern of racketeering activity." Filing 17 at 9.

### c. Applicable Standards

"A RICO claim must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). This "heightened

pleading standard" means that a plaintiff bringing a RICO claim must "plead the who, what, when, where, and how: the first paragraph of any newspaper story." *See id.* (quoting *Summerhill v. Terminix, Inc*., 637 F.3d 877, 880 (8th Cir. 2011)). Thus, Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims" and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003).

Pleading requirements aside, "RICO 'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *Crest Const. II, Inc.*, 660 F.3d at 353. "To establish a RICO violation, a plaintiff must allege and prove '(1) the existence of an enterprise; (2) defendant's association with the enterprise; (3) defendant's participation in predicate acts of racketeering; and (4) defendant's actions constitute a pattern of racketeering activity.'" *Sinclair v. Hawke*, 314 F.3d 934, 943 (8th Cir. 2003) (quoting *United HealthCare Corp. v. Amer. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996)). "Failure to present sufficient evidence on any one element of a RICO claim means the entire claim fails." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008). "Racketeering activity" is explicitly defined in 18 U.S.C. § 1961(1) and includes a long list of predicate acts. The phrase "pattern of racketeering activity" is likewise defined within the text of 18 U.S.C. § 1961 and "requires at least two acts of racketeering activity" occurring within ten years of each other (excluding any period of imprisonment). 18 U.S.C. § 1961(5). "[A] civil action based on . . . a substantive RICO violation must allege the commission of a predicate RICO act[.]" *Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 386 (8th Cir. 1993).

d.   Analysis and Conclusion

Brunken's bare-bones allegation that Defendants engaged in a "pattern of racketeering activity" is not by itself enough to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). In

*Crest Const. II Inc.*, the Eighth Circuit Court of Appeals found that the plaintiffs did not properly plead a RICO claim despite their attempt to do so over the course of 27 paragraphs in their complaint "set[ting] out the factual basis for [their] RICO claim" and 17 paragraphs in their complaint "set[ting] out the elements of their RICO claim." 660 F.3d at 353–54. Their lengthy recitals notwithstanding, the Eighth Circuit concluded that the plaintiffs' vague allegations "awash with phrases such as 'ongoing scheme,' 'pattern of racketeering, and 'participation in a fraudulent scheme'" were—without more—"insufficient to form the basis of a RICO claim." *Id.* at 356. Much of the same can be said about Brunken's RICO claim here.

Most of Brunken's allegations are conclusory in nature and do not describe with any degree of specificity what it is that he is referring to exactly. *See* Filing 1-2 at 10 (¶¶ 54, 55, 56). The closest he comes to articulating true predicate acts that supposedly qualify as racketeering activity is in paragraphs 57 and 58 of his Amended Complaint. There he alleges that FBSN and Parish were involved in offenses pertaining to: (1) fraud, (2) criminal impersonation, as enumerated and defined in the Nebraska Public Protection Act, (3) mail fraud, and (4) other provisions of the Nebraska Public Protection Act. Filing 1-2 at 10–11 (¶¶ 57–58). As noted previously, Brunken has also brought a claim for "Conspiracy to Violate . . . RICO" in the Fourth Count of his Amended Complaint. Filing 1-2 at 11. The Court will address each of these allegations in turn.

i.   "Offenses Involving Fraud"

Brunken's vague reference to "offenses involving fraud" without any accompanying explanation fails to satisfy Rule 9(b)'s heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Brunken has not come close to doing so here. His overly broad invocation most certainly does not "plead the who, what, when, where, and how" that is required under Rule 9(b). *Crest Const. II, Inc.*, 660 F.3d at 353. More problematic still, general "fraud" does not constitute a

predicate offense under 18 U.S.C. § 1961(1)'s definition of "racketeering activity." While certain, enumerated species of fraud qualify under this statute, merely citing unspecified "offenses involving fraud" is not enough. *See* 18 U.S.C. § 1961(1). Moreover, Brunken's own brief appears to disown this very theory. *See* Filing 17 at 8 (arguing, "The RICO claims in the complaint rest on a pattern of criminal impersonation, not fraud"). Thus, the Amended Complaint's reference to "offenses involving fraud" fails to allege a predicate act sufficient to make out a RICO claim.

ii.   Criminal Impersonation under Neb. Rev. Stat. § 28–638

Brunken's specific reliance on Nebraska's prohibition against "criminal impersonation" fares no better—but for a different reason. "[C]riminal impersonation under [Neb. Rev. Stat. §] 28–638" is included within the category of predicate offenses that can qualify as racketeering activity under the Nebraska Public Protection Act.[7] However, "criminal impersonation" is not a predicate act for purposes of a federal RICO action.

The category of state law offenses qualifying as "racketeering activity" under the federal RICO statute, 18 U.S.C. § 1961(1), is limited in nature. It includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1). Nebraska's statutory prohibition on "criminal impersonation" under Neb. Rev. Stat. § 28–638 does not fall within this ambit. Brunken's reliance on this state law statute fails to state a predicate offense sufficient to go forward on a federal RICO claim.

---

[7] *See* Neb. Rev. Stat. § 28–1354(5)(d).

### iii.  Mail Fraud

Brunken's mail fraud assertion also fails. Although mail fraud under 18 U.S.C. § 1341 is a predicate offense that can qualify as "racketeering activity" under 18 U.S.C. § 1961(1), the Amended Complaint's passing reference to "mail fraud" is not by itself sufficient to state a RICO claim. When pled as a predicate act in a civil RICO claim, mail fraud is subject to Rule 9(b)'s heightened pleading standard. *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995); *see also Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) ("It is settled, as we have already said, that Rule 9(b) applies to allegations of mail and wire fraud"). This requires a plaintiff to "state with particularity the circumstances constituting" mail fraud by "plead[ing] the who, what, when, where, and how" in his or her complaint. *See* Fed. R. Civ. P. 9(b); *Crest Const. II, Inc.*, 660 F.3d at 353. The Amended Complaint does not do so here; it does not even allege that any Defendant mailed or considered mailing anything. Nor does Brunken make any attempt in his brief to explain or elaborate upon the reference to "mail fraud" in his Amended Complaint. Merely mentioning "mail fraud" is insufficient to meet the requirements of Rule 9(b). Plaintiff's *pro se* status does not excuse this failure; even a *pro se* litigant "still must allege facts to support the claims advanced." *Stone*, 364 F.3d at 914. Therefore, Brunken has failed to state a RICO claim premised upon mail fraud.

### iv.  Other Provisions of the Nebraska Public Protection Act

Brunken's reliance on other alleged conspiracies or attempted violations of the Nebraska Public Protection Act also do not state predicate offenses sufficient for a RICO claim. Brunken broadly asserts that Defendants "conspired or attempted to violate any or all the provisions of subsection (1), (2), or (3) of" Neb. Rev. Stat. § 28–1355. Filing 1-2 at 11. However, Neb. Rev. Stat. § 28–1355 does not set forth any predicate acts under the Nebraska Public Protection Act, let alone the federal RICO Act. The predicate acts that constitute racketeering activity under the

13

Nebraska Public Protection Act are defined in Neb. Rev. Stat. § 28–1354(5). Brunken claims that "criminal impersonation" is a predicate act for his RICO claim. Again, "criminal impersonation" under Nebraska law does not qualify as a predicate act under the federal RICO statute. Brunken does not allege any other predicate acts under Neb. Rev. Stat. § 28–1354(5) in his Amended Complaint that constitute a predicate act for his RICO claim. Accordingly, Brunken's reliance upon Neb. Rev. Stat. § 28–1355 necessarily fails to allege a predicate act sufficient to go forward on a RICO claim.

v. Plaintiff's RICO Conspiracy Claim

Turning finally to Brunken's claim premised upon a conspiracy to violate RICO as alleged in the fourth cause of action in his Amended Complaint, the Court recognizes that there is a difference between a civil claim for a substantive RICO Act violation and a civil claim for a conspiracy to violate the RICO Act. *See Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 952 (8th Cir. 1999) (noting the "plaintiff asserted both substantive RICO claims under 18 U.S.C. § 1962(a)-(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d)"). However, the Supreme Court has held that "a person may not bring suit under § 1964(c) [providing for a civil suit for a violation of § 1962] predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute." *Beck v. Prupris*, 529 U.S. 494, 507 (2000).

In other words, standing to bring a civil RICO conspiracy claim is limited "to individuals who have been harmed by a RICO predicate act committed in furtherance of a conspiracy to violate RICO." *Hamm*, 187 F.3d at 947. Even before the Supreme Court decided *Beck*, the Eighth Circuit repeatedly dismissed the argument that "unlike a substantive RICO claim under 18 U.S.C. § 1962(a), (b), or (c), in order [for plaintiffs] to establish standing to bring a civil RICO conspiracy claim under § 1962(d), they need only allege that their injury was caused by any overt act in

furtherance of the conspiracy and not a RICO predicate act." *Hamm*, 187 F.3d at 954 (noting that it previously rejected this same argument in *Bowman*, 985 F.2d 383). More recently, the Eighth Circuit has continued to insist that plaintiffs bringing civil RICO claims must show that their injury was "caused 'by conduct which constitutes racketeering activity, that is, RICO predicate acts, and not by other conduct of the defendant.'" *Grice v. Leflore*, No. 21–1547, 2022 WL 2734418, at *1 (8th Cir. July 14, 2022) (per curiam) (quoting *Hamm*, 187 F.3d at 952).

Here, Brunken has alleged that he "suffered injuries to his business and property as a direct and proximate result of Defendants' conspiracy." Filing 1-2 at 11. Yet at no point does he allege any particular predicate act or acts covered under RICO that caused such injury. He has, therefore, fundamentally failed to state a claim because the only individuals who have standing to bring a civil RICO conspiracy claim are those "who have been harmed by a RICO predicate act committed in furtherance of a conspiracy to violate RICO*." Hamm*, 187 F.3d at 947. By not alleging any RICO predicate acts, Brunken has necessarily failed to state a civil RICO conspiracy claim. To that end, Brunken's brief does not address his civil RICO conspiracy claim whatsoever.[8]

   3. *Brunken's FCRA Claim*

      a.   Overview of the Claim

The only other federal claim alleged in Brunken's Amended Complaint is for violations of "The Fair Credit Reporting Act." Filing 1-2 at 17. Brunken does not specifically invoke any particular provision of the FCRA, but he claims that "Defendants published Plaintiff's personally identifying information upon third parties, without authorization or justification." Filing 1-2 at 17. He further alleges that "Defendants requested a credit report for an impermissible purpose." Filing 1-2 at 17. Brunken separately alleges "[i]n the alternative" that "Defendants published information

---

[8] *See* Filing 17 at 9–10. His brief only discusses the civil conspiracy claim that he brought in relation to Nebraska's Public Protection Act. *See* Filing 17 at 9–10.

15

that they knew, or reasonably should have known was inaccurate" and that Brunken "served Defendants with written notice of the inaccuracies." Filing 1-2 at 17–18. According to Brunken, "Defendants failed to conduct a reasonable investigation and/or to correct the inaccuracies." Filing 1-2 at 18.

b.   The Parties' Arguments

Parish contends that "[i]t is unclear exactly what cause of action [Plaintiff] is attempting to plead" in this Count of his Amended Complaint. Filing 9 at 12. Parish further notes that Brunken has not "plead[ed] any facts establishing that Parish obtained a credit report for" Brunken. Filing 9 at 12. Parish also points out that Brunken did not "plead any facts establishing that Brunken served Parish with a written notice of inaccuracies" and submits that this claim "appears to essentially be a parroting of Brunken's earlier allegations of defamation and invasion of privacy . . . ." Filing 9 at 12–13.

Brunken counters that "[d]isseminators of private financial information are liable for failing to adequately investigate claims of inaccuracy when put on notice by written request to do so." Filing 17 at 17. He further argues, "FBSN's representation of itself as a quasi-government, law enforcement, and/or licensed private investigation corporation bestows unique context upon its presentation of Plaintiff's (false) personal and financial information as authoritative and official." Filing 17 at 17.

c.   Applicable Standards

The FCRA, 15 U.S.C. § 1691, *et seq.*, "requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports . . . and imposes liability on 'any person who willfully fails to comply with any requirement of the Act with respect to any' individual . . . ." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1542–43 (2016) (alterations omitted). The FCRA imposes duties upon not only Credit Reporting Agencies (CRAs), but also

16

on "users of consumer reports and furnishers of information to CRAs[.]" *Sprague v. Salisbury Bank & Tr. Co.,* 969 F.3d 95, 98 (2d Cir. 2020). The FCRA also "creates a cause of action for consumers to sue and recover damages for certain violations." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2201 (2021). However, "the FCRA does not provide a private cause of action" for every duty that is violated. *See Sprague*, 969 F.3d at 98–99.

        d.   Analysis and Conclusion

                i.   The Overarching Flaw with the FCRA Claim

For a number of specific reasons addressed in further detail below, Brunken has failed to allege claims under the FCRA. However, there is one fundamental and overarching problem that permeates throughout this Count of his Complaint. He has not plausibly alleged a factual basis to conclude that any of the Defendants qualify as CRAs. Nor has he plausibly alleged a factual basis to conclude that any of the information the Defendants supposedly furnished in this case was furnished to a CRA. Although this pleading defect does not plague his discrete claim that Defendants requested a credit report for an improper purpose, it fundamentally undoes all his other claims under the FCRA.

                ii.  Brunken Has Failed to State a Claim Under the FCRA Pursuant to 15 U.S.C. § 1681s–2(b)

Just as in *Sprague v. Salisbury*, Brunken's "Amended Complaint does not reference a specific provision of the FCRA." 969 F.3d at 97. Indeed, it gives "no guidance as to what section of the FCRA [Plaintiff seeks] to employ in the litigation." *Id.* at 100. It is difficult to tell whether Brunken is claiming that Defendants are liable under the FCRA because they violated duties they owed as a supposed consumer reporting agency, because they violated duties owed as furnishers of information to CRAs, because they violated duties owed as users of consumer reports, or some combination of the three. Parish's contention that "[i]t is unclear exactly what cause of action

Brunken is attempting to plead," Filing 9 at 12, fairly characterizes this portion of Brunken's

Amended Complaint.

In his opposition brief, however, Brunken cites to a specific provision of law and asserts,

"The Fair Credit Reporting Act Provides a Private Cause of Action via 15 U.S.C. § 1681s–2(b)."

Filing 17 at 17. He also cites the Eleventh Circuit's decision in *Felts v. Wells Fargo Bank*, 893

F.3d 1305 (11th Cir. 2018)—a case where "Section 1681s–2(b) [was] the basis for [the plaintiff's]

claim[.]" *Felts*, 893 F.3d at 1312; *see also* Filing 17 at 17 (citing *Felts* for the proposition that

"Disseminators of private financial information are liable for failing to adequately investigate

claims of inaccuracy when put on notice by written request to do so").

A plaintiff cannot save an otherwise vague and unclear claim within his Amended

Complaint by invoking a particular statute for the very first time in his opposition filing to a motion

to dismiss premised on Fed. R. Civ. P. 12(b)(6). The Eighth Circuit has explained,

> "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition
> to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1107
> (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).
> To hold otherwise would mean that a party could unilaterally amend a complaint at
> will, *see Friedman v. Village of Skokie*, 763 F.2d 236, 239 (7th Cir.1985) ("Filing
> an amendment to a complaint without seeking leave of court or written consent of
> the parties is a nullity"), even without filing an amendment, and simply by raising
> a point in a brief.

*Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). Even though

Brunken is suing *pro se*, that does not excuse his failure to identify any basis for a claim in his

Amended Complaint.

The failure of Brunken to properly allege an actionable claim under the FCRA is fatal and

sufficient alone to dismiss the claim. However, even if Brunken did allege such a claim, it would

fail anyway. Brunken claims he has stated a cause of action under the statutory provision he now

asks this Court to consider—15 U.S.C. §1681s–2(b). This section of the statute "sets forth an

information furnisher's responsibilities under the FCRA[.]" *Sprague*, 969 F.3d at 98. However, § 1681s–2 "delineat[es] two separate categories of duties." *Id.* Section 1681s–2(a) "details a furnisher's responsibility to provide accurate information, including a duty to refrain from knowingly reporting inaccurate information, . . . and to correct information discovered to be inaccurate[.]" *Id.* By contrast, § 1681s–2(b), which Brunken identifies in his brief as the basis for his claim, "outlines a furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report." *Id.* at 99.

Here, Brunken alleges "Defendants published information that they knew, or reasonably should have known, was inaccurate." Filing 1-2 at 17 (¶124). Liberally construing his Amended Complaint, this would appear to make out a claim under 15 U.S.C. § 1681s–2(a) because that provision provides, "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s–2(a)(1)(A). The problem for Brunken is that there is no "private cause of action for violations of Section 1681s–2(a)." *Sprague*, 969 F.3d at 99; *see also Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010) ("Congress expressly limited furnisher's liability under § 1681s–2(a) by prohibiting private suits for violations of that portion of the statute"). To the extent Brunken is alleging that Defendants were acting as furnishers, he has no private right of action based on their alleged failure "to provide accurate information," "to refrain from knowingly reporting inaccurate information," or "to correct information discovered to be inaccurate." *Sprague*, 969 F.3d at 98.

That brings the Court to § 1681s–2(b), the specific FCRA provision Brunken cites in his opposition brief. *See* Filing 17 at 17. Section 1681s–2(b) does create a private right of action. *Chiang*, 595 F.3d at 36. Again, this provision "outlines a furnisher's duties following a dispute

regarding the completeness or accuracy of a consumer's credit report." *Sprague*, 969 F.3d at 99.[9] Here, Brunken's Amended Complaint alleges that he "served Defendants with written notice of the inaccuracies" in their pertinent publication, but they "failed to conduct a reasonable investigation and/or to correct the inaccuracies." Filing 1-2 at 18 (¶125). That is, he "served Parish with a certified request for retraction specifically confronting Parish with the falsity of the allegations and demanding correction." Filing 1-2 at 7 (¶32); *see also* Filing 17 at 17.

Even accepting Bruken's factual allegations as true, *Glick*, 944 F.3d at 717 n.2, there is still a fundamental problem with this claim that Brunken cannot circumvent: "The statute is clear that the notice triggering these duties must come from a [Credit Reporting Agency (CRA)], not the consumer." *Sprague*, 969 F.3d at 99. "Accordingly, Section 1681s–2(b) is not implicated simply because a consumer contacts a furnisher . . . regarding inaccuracies in her credit report." *Id.* Like the instant case, the plaintiff in *Sprague* did "not allege that a CRA notified [the furnisher] of their dispute concerning the information in the Report" nor did they "even allege that they notified a CRA of the discrepancy." *Id.* There, as here, the Amended Complaint only alleges that the "consumer" (*i.e.*, Brunken) directly notified the alleged furnisher (*i.e.*, Defendants) of a reported inaccuracy. *See id.* Brunken plainly states in his Amended Complaint that he was the one who served Parish "with a certified request for retraction[.]" Filing 1-2 at 7 (¶32). "This alone is

---

[9] *Sprague* referred to "a consumer's credit report." 969 F.3d at 99. While a credit report may be the paradigmatic type of report that is implicated in an FCRA claim, the Court notes that the statute uses the term "Consumer Report" not "Credit Report." *See* 15 U.S.C. § 1681a(d). The FCRA defines the term "consumer report" to mean the following:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1)(A)–(C).

insufficient to state a claim under Section 1681s–2(b)." *Sprague*, 969 F.3d at 99. For the foregoing reasons, and pursuant to Fed. R. Civ. P. 12(b)(6), Brunken has failed to state a claim under § 1681s–2(b) of the FCRA.

### iii.   Plaintiff's Remaining Allegations in his FCRA Claim

The Court concludes it analysis of Brunken's FCRA Claim by addressing his allegations that "Defendants published [his] personally identifying information upon third parties, without authorization or justification" and that "Defendants requested a credit report for an impermissible purpose." Filing 1-2 at 17 (¶¶ 121–122). At bottom, and without more, these perfunctory recitations cannot form the basis for a private right of action under the FCRA. Liberal construction notwithstanding, the Court "will not supply additional facts, nor will [it] construct a legal theory for [P]laintiff that assumes facts that have not been pleaded." *Dunn*, 880 F.2d at 1197.

### 1.   Brunken Has Failed to State a Claim Under the FCRA Based on His Allegation that Defendants Requested a Credit Report for an Improper Purpose

As for Brunken's claim that Defendants requested a credit report for an impermissible purpose, the FCRA states in pertinent part that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section . . . ." 15 U.S.C. § 1681b(f). The FCRA sets forth an exclusive list of permissible purposes that allow a CRA to furnish a consumer report. *See* 15 U.S.C. § 1681b(a). One may be liable under the FCRA "for obtaining a consumer report under false pretenses or knowingly without a permissible purpose . . . ." 15 U.S.C.§ 1681n(a)(B). However, in order for Brunken to prevail on this claim, he must prove the following three elements:

First, Plaintiff[] must demonstrate that Defendant[s] obtained a "consumer report" from a "consumer reporting agency" under the FCRA. *See* 15 U.S.C. § 1681a(d). Second, Plaintiff must establish that the Defendant obtained their credit reports under false pretenses or knowingly without a permissible purpose. And finally, the

Plaintiff must show that the Defendant acted willfully or negligently when it requested the report. 15 U.S.C. § 1681n-*o*.

*Myers v. Bennett L. Offs*., 238 F. Supp. 2d 1196, 1200–01 (D. Nev. 2002) (footnote omitted); *see also Braun v. Client Servs. Inc.*, 14 F. Supp. 3d 391, 396 (S.D.N.Y. 2014) ("To state a claim for civil liability based on Section 1681b, a plaintiff must allege both that the defendant used or obtained the plaintiff's credit report for an impermissible purpose, and that the violation was willful or negligent"). With respect to the mens rea requirement, "various courts have held that, in order to survive a motion to dismiss, the plaintiff's complaint must allege specific facts as to the defendant's mental state when the defendant accessed the plaintiff's credit report. Merely stating that the violation was 'willful' or 'negligent' is insufficient." *Braun*, 14 F. Supp. 3d at 397 (citing cases).

Brunken's claim fails for a host of reasons here. As a fundamental matter, Brunken's nine-word assertion that "Defendants requested a credit report for an impermissible purpose" is precisely the type of conclusory and "naked assertion[] . . . devoid of further factual enhancement" that is insufficient to state a claim. *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do[,]" and here Brunken has not even done that. *See id.* Brunken's claim does not assert any mental state on the part of Defendants whatsoever. Additionally, Brunken does not claim that Defendants "obtained" a credit report, he only alleges that they "requested" one. Filing 1-2 at 17. Such a claim requires Brunken to show that Defendants "obtained a 'consumer report'" and that they "obtained" it without a permissible purpose. *Myers*, 238 F. Supp. 2d at 1200–01.

Nor does Brunken allege when Defendants "requested" this credit report or from whom they "requested" it—let alone whether that entity qualifies as a CRA. *See* 15 U.S.C. § 1681a(d)(1) (defining the term "consumer report" to necessarily require that it be the product of a

22

communication "by a consumer reporting agency"). Indeed, Brunken does not even allege to whom this consumer report actually pertained; he merely alleges that Defendants requested some unnamed person's "credit report for an impermissible purpose." Filing 1-2 at 17. Ostensibly, Brunken is alleging that Defendants requested a credit report on him, but at no point does he actually plead this fact in his Amended Complaint. It is likewise unclear why, in Brunken's view, the request for this report was impermissible under 15 U.S.C. § 1681b(a). For the foregoing reasons, this perfunctory allegation without any accompanying facts fails to state a claim under the FCRA.

> 2.  Brunken Has Failed to State a Claim Under the FCRA Based on the Allegation that Defendants Published his Personally Identifying Information

Finally, Brunken's allegation that "Defendants published [his] personally identifying information upon third parties, without authorization or justification" similarly fails to state a claim under the FCRA. First, Brunken has not identified any information in this Count of his Amended Complaint that was both disclosed and protected from disclosure by the FCRA. Second, Brunken does not allege that any of the Defendants were CRAs. Therefore, he necessarily cannot make out a claim that Defendants published a "consumer report" on third parties. By definition, information cannot qualify as a "consumer report" under the FCRA unless it is communicated "by a consumer reporting agency" and bears "on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ." 15 U.S.C. § 1681a(d). In the absence of any allegation—let alone a plausible allegation—that Defendants were CRAs, any information they published could not have amounted to a consumer report entitled to privacy protections under the FCRA. For the foregoing reasons, Brunken has failed to state a claim under the FCRA.

### 4. *The Court Will Not Grant Leave to Amend the RICO and FCRA Claims*

Federal Rule of Civil Procedure 15(a) "governs the pretrial amendment of pleadings and states that where an amendment is not sought 'as a matter of course'—as defined by the Rule—'a party may amend its pleading only with the opposing party's written consent or the court's leave.'" *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). Brunken "do[es] not have an absolute or automatic right to amend." *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). At the very conclusion of his opposition brief, Brunken conditionally requested that if this Court were to grant Parish's Motion to Dismiss, he be "grant[ed] leave to amend the complaint where relevant[.]" Filing 17 at 21. Yet, at no point in this or any other portion of his brief did he propose how he would fix the problematic portions of his Amended Complaint. *See generally* Filing 17. The Eighth Circuit has held "that to preserve the right to amend a complaint a party must submit a proposed amendment along with its motion." *Wolgin v. Simon*, 722 F.2d 389, 395 (8th Cir. 1983) (footnote omitted). Consistent with this approach, the Court will not grant Brunken leave to amend a Complaint that has already been amended once before.[10]

As in *Wolgin*, Brunken "did not submit a proper amendment to [this Court], nor [is] there anything in [Brunken's] brief to indicate what an amended complaint would have contained." *Id.* at 394. There, as here, the plaintiff did not submit a separate motion to amend; instead, "[i]n his brief in opposition to the [defendants'] motion to dismiss, the [plaintiff] concluded his argument by requesting leave to amend the complaint if the court granted the [defendants'] motion. *Id.* The Eighth Circuit reasoned that "[u]nder these circumstances a grant of leave to amend would not

---

[10] This Court's local rules likewise require that when a party moves for leave to amend a pleading, that party "must file as an attachment to the motion an unsigned copy of the proposed amended pleading that clearly identifies the proposed amendments." NECivR 15.1(a). Although the Court's local rules allow it to consider a *pro se* litigant's "amended pleading as supplemental to, rather than as superseding the original pleading[,]" nothing within this rule excuses a *pro se* litigant from complying with the requirement to file a proposed amended pleading when moving for leave to amend. *See* NECivR 15.1(b).

have been appropriate." *Id.* The Eighth Circuit has continued to adhere to this approach in more recent years. *See Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1036–37 (8th Cir. 2019); *Olson v. Amatuzio*, 799 F. App'x 433, 437 (8th Cir. 2020) (concluding "the district court did not abuse its discretion by not granting [plaintiff] leave to amend his complaint" where the plaintiff "did not submit a motion to amend his complaint, nor did he submit a proposed amendment, which we have held a party must do to 'preserve the right to amend a complaint'") (quoting *Wolgin*, 722 F.2d at 395), *cert. denied*, 141 S. Ct. 255 (2020); *Mitchell*, 28 F.4th at 903 (finding "the district court did not abuse its discretion in dismissing the case with prejudice without giving [the plaintiff] an opportunity to amend" where the record did not indicate that the plaintiff "ever submitted a proposed amended complaint or clarified what one might have contained").

Just like Brunken and the plaintiff in *Wolgin*, the plaintiff in *Soueidan* also "conditionally requested leave to amend his complaint in his response to [the defendant's] motion to dismiss" but "did not disclose what he would change in his complaint, nor did he attach a proposed amended pleading or file a separate motion for leave to amend." *Soueidan*, 926 F.3d at 1036. Relying on its prior decision in *Wolgin*, the *Soueidan* court held "that the district court did not abuse its discretion in denying [plaintiff] leave to amend when [the plaintiff] did not submit a proposed amendment to the trial court nor include anything in his brief to indicate what an amended complaint would have contained." *Soueidan*, 926 F.3d at 1036–37 (cleaned up). Thus, the *Soueidan* court concluded that "*Wolgin* is controlling." *Soueidan*, 926 F.3d at 1037. Because Brunken has not proposed any amendment or even attempted in his brief to explain how he can fix his defective RICO and FCRA claims, the Court hereby denies Brunken's request for leave to further amend his Complaint. Even if the Court were to entertain this request in the absence of a proposed amendment, the Court does not see how Brunken could overcome the myriad factual and legal problems that plague his claims

under the federal RICO Act and the FCRA. *See Fairview Health Sys.*, 413 F.3d at 749 ("Futility is a valid basis for denying leave to amend"). Without leave to amend, the Court's dismissal of Brunken's federal claims is necessarily with prejudice.

### D.      Remand to State Court is Necessary and Appropriate

Having dismissed the only claims that are premised upon federal law—and, thus, the only reasons why this case was removed to federal court in the first place—the Court remands this case back to state court. Parish's notice of removal was premised upon 28 U.S.C. §§ 1331 and 1441. *See* Filing 1 at 1. That is, Parish invoked this Court's jurisdiction to hear Brunken's RICO and FCRA claims because they posed a federal question under 28 U.S.C. § 1331. *See* Filing 1 at 1–2. Parish acknowledged that apart from the RICO and FCRA claims, "[t]he remainder of Plaintiff's causes of action arise under state law." Filing 1 at 2. However, he argued that the Court had authority to hear these state law claims pursuant to 28 U.S.C. §1441(c) because under that statute "the entire action may be removed if the action would be removable without inclusion of the" state law claims. *See* 28 U.S.C. § 1441(c)(1)(B); Filing 1 at 2 (¶8). Now that Brunken's federal claims have been dismissed, there is no basis for this Court to continue exercising jurisdiction under 28 U.S.C. § 1441(c). Therefore, the Court "must remand the case" back to state court. *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 444–45 (8th Cir. 2010).

Parish did not cite supplemental jurisdiction under 28 U.S.C. § 1367 as a basis for removal. That statute allows a federal court to exercise jurisdiction "over all other claims that are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction could have been invoked by Parish in his Notice of Removal, and assuming *arguendo* that it could apply under these circumstances, the Court does not find that it would be prudent to exercise such jurisdiction in this case. When state law claims are the only

claims that remain after all federal claims have been dismissed, a "district court maintains discretion to either remand the state law claims or to keep them in federal court" under § 1367(c). *Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 599 (8th Cir. 2002). However, the statute provides four reasons why a district court may decline to exercise supplemental jurisdiction, and the Court finds that three of them apply in this instance. *See* 28 U.S.C. § 1367(c)(1)–(4).

First, Brunken has alleged several claims that the appear to present matters of first impression under state law.[11] Under 28 U.S.C. § 1367(c)(1), a district court may decline to exercise supplemental jurisdiction where a claim "raises a novel or complex issue of State law[.]" The Court finds that Brunken's novel, state-law claims are better suited for a Nebraska state court. *See Starkey v. Amber Enterprises, Inc.*, 987 F.3d 758, 766 (8th Cir. 2021) ("When a claim raises novel issues of state law, we have determined that it is better to let the state courts decide the matter"). Second, the vast majority of claims in this case arise under state law. Brunken has brought 14 state law claims compared to the two federal claims that this Court has now dismissed. Consistent with 28 U.S.C. § 1367(c)(2), a district court may decline to exercise supplemental jurisdiction where "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[.]" Such is the case here. Third, this Court "has dismissed all claims over which it has original jurisdiction"—which is, itself, a basis for declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

Each of these reasons standing alone would justify the Court's decision not to exercise supplemental jurisdiction even if it had been invoked by Parish and even if it did apply under these

---

[11] *See e.g.*, Filing 9 at 3–4 (Parish noting "Nebraska does not appear to have addressed the ability of a private citizen to enforce a criminal statute as Parish has found no cases addressing the issue" and describing this issue as "an unanswered matter of Nebraska jurisprudence"); Filing 17 at 5 (Plaintiff agreeing "that the Nebraska courts have not explicitly addressed whether criminal impersonation is a stand-alone tort under which civil Plaintiff's [sic] may recover"); *see also* Filing 9 at 5 (describing Plaintiff's claim under the Nebraska Public Protection Act as presenting another "unanswered matter of Nebraska jurisprudence").

circumstances. Taken together, the Court confidently concludes it would be unwise to exercise

such jurisdiction here—even if it could.[12] The Court finds this result to be all the more appropriate

given that this case is still in the very early stages of litigation and discovery has not yet begun.

*See* Filing 19 at 2 (granting Parish's Motion to Stay Discovery). Accordingly, the Court remands

this case back to the District Court of Douglas County, Nebraska, where it originated.

### III. CONCLUSION

IT IS ORDERED:

1. Parish's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is granted in part;

    a.    Brunken's claims premised upon violations of and conspiracies to violate the
    Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq*.,
    are dismissed with prejudice;

    b.    Brunken's claims premised upon violations of the Fair Credit Reporting Act
    (FCRA), 15 U.S.C. § 1691, *et seq*., are dismissed with prejudice;

2. Brunken's alternative request for leave to amend his Complaint is denied; and

3. This case is remanded to the District Court for Douglas County, Nebraska, for
    resolution of the remaining claims alleged in Brunken's Amended Complaint.

---

[12] The Court further notes that Parish did not invoke diversity jurisdiction under 28 U.S.C. § 1332 in his Notice of Removal. Based upon the matters before the Court, it would appear that Parish could not have done so. Plaintiff's Amended Complaint alleges that both Plaintiff and Parish are Nebraska residents. Filing 1-2 at 1. Plaintiff also filed a properly authenticated and notarized index of exhibits along with his response to Parish's Motion to Dismiss. Filing 18. One of these exhibits is Parish's response to Plaintiff's request for admissions in a different case before the District Court of Douglas County, Nebraska. Filing 18 at 2–3. It is not clear when that document was completed, but according to it Parish admits that he is a Nebraska resident. Filing 18 at 3. Parish has not submitted anything to this Court to suggest otherwise. To the extent that Parish and Plaintiff are both domiciled in Nebraska, there can be no diversity jurisdiction over this case under 28 U.S.C. § 1332. *See One Point Sols., LLC v. Borchet*, 486 F.3d 342, 346 (8th Cir. 2007) ("Federal court diversity jurisdiction of state law claims requires . . . complete diversity of citizenship among the litigants. Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship") (internal citation omitted).

Dated this 22nd day of November, 2022.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge